UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRESOR TIDO-NGOUMTSOP,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, OTAY MESA DETENTION CENTER, et al.,<br><br>Respondents. | Case No.:  26cv2913-LL-VET<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**<br><br>[ECF No. 1] |

Before the Court is Petitioner Tresor Tido-Ngoumtsop's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Respondent filed a Return [ECF No. 5], and Petitioner filed a Traverse [ECF No. 6]. For the reasons set forth below, the Court **GRANTS** the Petition.

## I.      BACKGROUND

Petitioner is a native and citizen of Cameroon who entered the United States without inspection on about March 6, 2022. Pet. ¶ 25. On about April 7, 2022, Petitioner was subsequently released into the United States and permitted to reside at liberty in the community, pursuant to an Order of Release on Recognizance. *Id.* ¶¶ 25–26; ECF No. 1-2.

1

Following his release, Petitioner resided in the United States for over four years and complied with his immigration-related obligations. Pet. ¶¶ 27–28; ECF No. 6 at 1-2. On March 13, 2024, Petitioner was granted Temporary Protected Status pursuant to section 244 of the Immigration and Nationality Act. Pet. ¶ 26; ECF No. 1-4. On May 3, 2026, Petitioner was arrested near Camp Pendleton in Oceanside, California while working as an Uber driver. Pet. ¶ 28. Following the arrest, Immigration and Customs Enforcement took Petitioner into custody, and he is currently detained at the Otay Mesa Detention Center in San Diego, California. *Id*. ¶¶ 29–30. Since his re-detention, Petitioner has not been granted an individualized custody determination nor a custody review. *Id.* ¶ 31. On May 8, 2026, Petitioner filed the instant Petition. *Id.*

## II.    LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'"). In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence. *Lambert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004); *Bellew v. Gunn*, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

## III.   DISCUSSION

Petitioner alleges that the revocation of his release without a reasoned explanation or a hearing violates the Fifth Amendment's Due Process Clause and the Administrative Procedure Act. Pet. ¶¶ 50–63. He contends that the proper remedy is his immediate release or alternatively, a custody hearing. Pet. at 12-13.

Respondents acknowledge that Petitioner was previously released from immigration custody on conditional parole issued under 8 U.S.C. § 1226(a), but contend that he is currently subject to mandatory detention under § 1225(b)(2). ECF No. 5 at 2. Nevertheless, Respondents state that based on prior decisions by courts in this district in cases with facts

26cv2913-LL-VET

that are not materially distinguishable from this matter, the government does not oppose the Petition and defers to the Court on the appropriate relief. *Id.* at 3.

### A.  Detention Statue

The Court finds Petitioner is wrongfully detained under 8 U.S.C. § 1225(b). As a noncitizen who, at the time of his detention, had been present in the United States for more than four years, Petitioner was and is subject to 8 U.S.C. § 1226(a), which states that a noncitizen "may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). By contrast, 8 U.S.C § 1225(b) applies to noncitizens arriving at the border or who very recently entered the United States. *See Beltran v. Noem*, No. 25CV2650-LL-DEB, 2025 WL 3078837, at \*4–7 (S.D. Cal. Nov. 4, 2025). As the Supreme Court explained, the government may "detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)," while § 1226(a) allows the government to "detain certain aliens *already in the country* pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added). The Court adopts its reasoning stated in *Beltran v. Noem* on this issue. *Id.* at \*4–7.

### B.  Due Process Clause

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted). The Due Process Clause generally "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "The fundamental requirement of due process is the opportunity to

26cv2913-LL-VET

be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks and citation omitted).

The Court finds that having been previously released on an order of recognizance, Petitioner has a protected liberty interest in remaining free from detention. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)) (alterations in original).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Mathews*, 424 U.S. at 334–35. To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court considers the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

The Court finds that all three factors support a finding that the government's revocation of Petitioner's release without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his order of release on recognizance. *See Pinchi*, 792 F. Supp. 3d at 1032 ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of

26cv2913-LL-VET

custody." (citations omitted)). Freedom from detention is a fundamental part of due process protection. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992))).

Second, the risk of an erroneous deprivation of such interest is high as Petitioner's release was revoked without providing him notice or giving him an opportunity to be heard. Since the initial determination that Petitioner should be released on his own recognizance because he posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). There is no indication that Petitioner has failed to abide by the conditions of his release. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." *Id.* "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk . . . ." *Id.* The risk of erroneous deprivation of Petitioner's liberty is high because neither the government nor Petitioner has had an opportunity to determine whether there is any valid basis for his detention. *Pinchi*, 792 F. Supp. 3d at 1035 (citation omitted). It follows that the probable value of additional procedural safeguards, such as notice and a pre-deprivation hearing, is also high.

Third, the government's interest in detaining Petitioner without notice, reasoning, and a hearing is low. *See Pinchi*, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); *Alvarenga Matute v. Wofford*, 807 F. Supp. 3d 1120, 1130 (E.D. Cal. 2025); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). There is also no indication that

26cv2913-LL-VET

providing proper notice, reasoning, and a pre-deprivation hearing would be fiscally or administratively burdensome on the government. *See Pinchi*, 792 F. Supp. 3d at 1036 ("In immigration court, custody hearings are routine and impose a minimal cost." (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025))).

Therefore, because the government detained Petitioner by revoking his release without notice or a pre-deprivation hearing in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *4 (S.D. Cal. Sept. 26, 2025) (finding the petitioner's parole was revoked without notice and a hearing and without a showing of a change of circumstances, thus violating his due process rights and rendering his detention unlawful). The proper remedy for the unlawful detention is Petitioner's immediate release subject only to the conditions of his preexisting order of release on recognizance. *See Noori v. LaRose*, 807 F. Supp. 3d 1146, 1156 (S.D. Cal. 2025) (finding DHS violated the petitioner's due process rights by revoking his parole without notice or a hearing and ordering his immediate release); *Sanchez*, 2025 WL 2770629, at *5 (same); *Ortega*, 415 F. Supp. 3d at 970 (ordering immediate release after the petitioner was detained while out on bond without notice or pre-deprivation hearing).

Accordingly, the Court **GRANTS** the Petition.[1]

## IV.    CONCLUSION

For the reasons above, the Court **ORDERS**:

1.    Mr. Tido-Ngoumtsop's Petition for Writ of Habeas Corpus is **GRANTED**.[2]

2.    The government shall immediately release Mr. Tido-Ngoumtsop from custody.

---

[1] Having reached a decision on due process grounds, the Court declines to address Petitioner's alternative grounds for relief.

[2] Petitioner requests attorney's fees and costs under the Equal Access to Justice Act [Pet. at 13], which the Court **DENIES without prejudice**.

26cv2913-LL-VET

3.     The government shall return Mr. Tido-Ngoumtsop's personal property and identity documents, including his driver's license, employment authorization document, and any other personal belongings confiscated in connection with his detention.

4.     Prior to any re-detention of Mr. Tido-Ngoumtsop, he is entitled to notice of the reasons for revocation of his release and a pre-deprivation hearing before a neutral immigration judge to determine whether detention is warranted. At such a hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. *See Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025) (finding that the petitioner's initial release "reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk" and so if the government initiates re-detention, "it follows that the government should be required to bear the burden of providing a justification for the re-detention"); *Pinchi*, 792 F. Supp. 3d at 1038 (ordering that before the petitioner can be re-detained, she must be provided with a pre-detention bond hearing before a neutral immigration judge and that she may not be detained "unless the government demonstrates at such a bond hearing, by clear and convincing evidence, that she is a flight risk or a danger to the community and that no conditions other than his detention would be sufficient to prevent such harms").

5.     The Clerk of Court shall enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED.**

Dated:  May 21, 2026

_____

Honorable Linda Lopez
United States District Judge

7

26cv2913-LL-VET